**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Kristen E. Boysen (KB 0208)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **EDUARDO MALDONADO, TRINIDAD MALDONADO and EDGAR GONZALES, Individually and on Behalf of All Others Similarly Situated,** <br><br> **Plaintiffs,** <br><br> -against- <br><br> **MANHATTAN WINES AND SPIRITS MERCHANTS, INC., NAVIN PATEL and PARITA PATEL, Jointly and Severally,** <br><br> **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiffs Eduardo Maldonado, Trinidad Maldonado and Edgar Gonzales (together, the "Plaintiffs"), individually and on behalf of all others similarly situated, as collective and class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs are former porters, cleaners, stockers, floor employees and delivery employees at Defendants' liquor store located on the Upper East Side of Manhattan. For their

1

work, Plaintiffs received an hourly rate that did not compensate them at the statutory minimum wage for all hours that they worked and were paid straight time rates for all hours for which they received compensation, despite the fact that they typically worked well in excess of forty (40) hours each week.

2.      Defendants' payment schemes resulted in systemic underpayment of wages to Plaintiffs and Defendants' other non-management employees in violation of federal and state wage laws.

3.      Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid spread-of-hours premiums, unlawfully withheld gratuities, and for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

4.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees who worked for Defendants at any time during the three (3) years prior to the commencement of this action.

5.      Plaintiffs bring their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees who worked for Defendants in New York at any time during the six (6) years prior to the commencement of this action.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to

28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendants' business is located in this district.

8.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

9.      Plaintiff Eduardo Maldonado ("E. Maldonado") was, at all relevant times, an adult individual residing in Queens County, New York.

10.     Plaintiff Trinidad Maldonado ("T. Maldonado") was, at all relevant times, an adult individual residing in Bronx County, New York.

11.     Plaintiff Edgar Gonzalez ("Gonzalez") was, at all relevant times, an adult individual residing in Bronx County, New York.

12.     During the relevant time period, Plaintiffs performed work for Defendants at Garnet Wines & Liquors, located at 929 Lexington Avenue, New York, NY 10065.

13.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

14.     MANHATTAN WINES AND SPIRITS MERCHANTS, INC. is an active New York Corporation doing business as "Garnet Wines & Liquors" with its principal place of business at 929 Lexington Avenue, New York, NY 10065.

15.     Manhattan Wines and Spirits Merchants, Inc. is hereinafter referred to as "Garnet Wines" or the "Corporate Defendant."

16.     Defendant Navin Patel ("N. Patel") is an owner and operator of the Corporate Defendant who sets the Corporate Defendant's payroll policies, including the unlawful practices complained of herein.

17.     Throughout the relevant time period, upon information and belief, N. Patel was in charge of determining the Corporate Defendant's policies with respect to payroll, and otherwise running the business of the Corporate Defendant.

18.     Defendant Parita Patel ("P. Patel" and, together with N. Patel, the "Individual Defendants" and together with the Corporate Defendant, the "Defendants") is an owner and operator of the Corporate Defendant who sets the Corporate Defendant's payroll policies, including the unlawful practices complained of herein.

19.     Throughout the relevant time period, upon information and belief, P. Patel was in charge of determining the Corporate Defendant's policies with respect to payroll, and otherwise running the business of the Corporate Defendant.

20.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendant and acted intentionally in their direction and control of Plaintiffs and the Corporate Defendant's other similarly situated employees, and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

21.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

4

22.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

23.     At all relevant times, Plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

24.     Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00

25.     At all relevant times, the Corporate Defendant has used goods and materials produced in interstate commerce and has employed two or more individuals who handled these goods and materials.

26.     Upon information and belief, Defendants' employee Mihir Patel ("M. Patel") is a manager of Defendants' liquor store. Upon information and belief, on the rare occasion when one of the Individual Defendants were not present at the store, they were in constant contact with M. Patel and other managers throughout the relevant time period to ensure that the store was operating in accordance with Defendants' standards and policies.

**FLSA COLLECTIVE ACTION ALLEGATION**

27.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since May 31, 2015 and through the entry of judgment in this case (the "Collective Action Period") who worked as porters, cleaners, stockers, floor employees, delivery employees  and other non-exempt employees (the "Collective Action Members").

28.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policy of failing to pay minimum wages for all hours worked and overtime premiums for work performed in excess of forty (40) hours each week. As a result of this policy, Plaintiffs and the Collective Action Members did not receive the legally-required minimum wages for all hours worked or overtime premium payments for all hours worked in excess of forty (40) hours per week.

29.    Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

30.    Pursuant to the NYLL, Plaintiffs bring their Third through Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since May 31, 2012 and through the entry of judgment in this case (the "Class Period") who worked as porters, cleaners, stockers, floor employees, delivery employees  and other non-exempt employees (the "Class Members").

31.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

32.    The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least forty (40) Class Members.

33.    The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

a.    whether Defendants employed Plaintiffs and the Class Members within the

meaning of the NYLL;

b. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c. whether the Corporate Defendants in this Action operate together as a single integrated enterprise;

d. whether Defendants failed and/or refused to pay Plaintiffs and the Class Members wages for all hours worked;

e. whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wages for all hours worked;

f. whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

g. whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

h. whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

i. whether Defendants failed to provide proper wage notices to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

j. whether Defendants properly notified Plaintiffs and the Class Members that they were taking the tip credit;

k. whether Defendants illegally retained gratuities left by customers and failed to

pay all such gratuities to Plaintiffs and the Class Members;

l.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

m.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

34.  <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, are store employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift of ten (10) or more hours and/or a split shift, were not paid all gratuities to which they were entitled, and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

35.  <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

36.  Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

37.  <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

38.  Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against

corporate defendants.

39.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Store**

40.    At all relevant times, Defendants have been in the liquor sales business.

41.    According to their filings with the New York State Department of State, Division of Corporations and filings with the New York State Liquor Authority, Defendants have owned, operated and managed Garnet Wines & Liquors, located at 929 Lexington Avenue, New York, NY 10065, since in or around 2015.

42.    According to their filings with the New York State Department of State, Division of Corporations, Defendant P. Patel is listed as the contact person for DOS Process for Manhattan Wines and Spirits Merchants, Inc.

43.    Defendants' website provides: "For over twenty years Garnet has served the New York Metropolitan area with an outstanding selection of wines and spirits at even more outstanding prices. New York Magazine recently recommended Garnet as the best wine store on the upper east side of Manhattan and described our 'Huge selection, nearly 6000 bottles, at highly competitive prices and expert but unsnooty staff.'" (https://www.garnetwine.com).

44.    Upon information and belief, the Individual Defendants also own, operate and manage "Sharda Wine & Liquors," located at 7001 Amboy Road, Staten Island, NY 10307.

45.    Upon information and belief, the Individual Defendants also own, operate and

manage Reliance Wine & Liquors, located at 2626 Hylan Blvd, Staten Island, NY 10306.

46.    Defendant N. Patel is a frequent presence at the store where he oversees the operations of the store, supervises employees, handles payroll matters, speaks frequently with M. Patel and other managers and implements the policies complained of herein.

47.    Defendant P. Patel owns the liquor license to Garnet Wines and is "responsible for the activities of employees and patrons in all parts of the licensed premises" and is "required to maintain adequate books and records of all the transactions involving [her] licensed business. This includes records recording [her] employees…." (*See* State Liquor Authority, Retail Licensees Handbook).

**Plaintiffs' Work for Defendants**

48.    Plaintiff Eduardo Maldonado has worked for Defendants from in or around August 2016 through the present (the "E. Maldonado Employment Period"). Throughout the E. Maldonado Employment Period, Plaintiff E. Maldonado's primary job duties have included moving palettes of wine from trucks to the basement, cleaning around the store, making deliveries and assisting customers.

49.    From the beginning of the E. Maldonado Employment Period through in or around late 2017, Plaintiff E. Maldonado typically worked approximately twelve (12) hours per day, from 10:00 am to 10:00 pm, six (6) days per week, from Monday through Saturday, for a total of approximately seventy-two (72) hours per week, and sometimes more. From in or around late 2017 through the present, Plaintiff E. Maldonado has typically worked six (6) days per week, Monday through Saturday, from approximately 10:00 am to 9:00 pm for a total of approximately sixty-six (66) hours per week, and sometimes more. Plaintiff alleges that he is frequently required to work approximately one (1) additional hour on days when the store is busier due to sales, which has

typically happened at least once per week. Additionally, during the holiday season, he was occasionally required to work as late as 1:00 am or 2:00 am.

50.    For approximately the first year of the E. Maldonado Employment Period, Plaintiff E. Maldonado received ten dollars ($10.00) per hour for all hours for which he received compensation. For a period of approximately one (1) month starting in or around the summer of 2017, Plaintiff E. Maldonado was paid ten dollars and fifty cents ($10.50) per hour. Subsequently, Plaintiff E. Maldonado has received eleven dollars ($11.00) per hour. Throughout the E. Maldonado Employment Period, Plaintiff E. Maldonado has received his wages entirely in cash from either Defendant N. Patel or M. Patel with no breakdown of the hours that he worked or his regular or overtime rates.

51.    Plaintiff E. Maldonado alleges that on one (1) occasion in or around early 2018, he asked M. Patel for a raise to thirteen dollars ($13.00) per hour. Although E. Maldonado was simply requesting the applicable statutory minimum wage for large New York City employers, M. Patel denied his request and continued to pay E. Maldonado at his regular hourly rate of eleven dollars ($11.00) per hour.

52.    Despite the fact that E. Maldonado typically worked well in excess of forty (40) hours per week, he received his regular hourly rate for all hours for which he received compensation.

53.    Plaintiff Trinidad Maldonado worked for Defendants from in or around July 4, 2017 through in or around early May 2018 (the "T. Maldonado Employment Period"). Throughout the T. Maldonado Employment Period, Plaintiff T. Maldonado's primary job duties included disposing of cardboard boxes and garbage, transporting and organizing boxes of liquor in the basement and cleaning windows. For approximately the first four (4) months of the T. Maldonado

Employment Period, Plaintiff T. Maldonado additionally performed deliveries.

54.    From the beginning of the T. Maldonado Employment Period to in or around October 2017, Plaintiff T. Maldonado typically worked six (6) days per week, with Tuesdays off, twelve (12) hours per day, from approximately 10:00 am to 10:00 pm, for a total of approximately seventy-two (72) hours per week, and sometimes more. Although he was scheduled to start work at 10:00 am, he frequently arrived at around 9:30 am to ensure that the store was ready to be opened on time. Although he accurately recorded the exact time that he arrived and left the store, Plaintiff T. Maldonado did not receive wages of any kind for the additional time that he worked prior to opening the store.

55.    From in or around October 2017 through the end of the T. Maldonado Employment Period, Plaintiff T. Maldonado typically worked six (6) days per week, nine (9) hours per day, from 12:00 pm to 9:00 pm, for a total of approximately fifty-two (52) hours per week. During the holidays, Plaintiff T. Maldonado occasionally worked from approximately 11:00 am to 12:00 am, although he was required to work as late as 2:00 am on at least one (1) occasion.

56.    From the beginning of the T. Maldonado Employment Period to approximately October or November 2017, Plaintiff T. Maldonado was paid eight dollars ($8.00) per hour for all hours for which he received compensation. From approximately October or November 2017 through January 2018, Plaintiff T. Maldonado received nine dollars ($9.00) per hour. Subsequently, until the end of his employment with Defendants, Plaintiff T. Maldonado received thirteen dollars ($13.00) per hour. Throughout the T. Maldonado Employment Period, Plaintiff T. Maldonado received his wages entirely in cash from a manager, Mejir Patel, with no breakdown of the hours that he had worked or his regular or overtime rates.

57.    Despite the fact that T. Maldonado typically worked well in excess of forty (40)

hours per week, he received his regular hourly rate for all hours for which he received compensation.

58.    On at least one (1) occasion around the time that he was hired, Plaintiff T. Maldonado explained to Defendant N. Patel and M. Patel that it was his understanding that he was supposed to receive overtime premiums for hours worked in excess of forty (40) hours in a week. N. Patel and M. Patel responded by informing T. Maldonado that the store does not pay overtime and that he could look for work elsewhere if he took issue with that.

59.    <u>Plaintiff Edgar Gonzalez</u> worked for Defendants from in or around August 8, 2016 through in or around early May 2018, except for a period of approximately one (1) month between September 2017 and October 2017 when Gonzalez was out on vacation (the "Gonzalez Employment Period"). Throughout the Gonzalez Employment Period, Plaintiff Gonzalez's primary job duties included bringing bottles up to the store from the basement, disposing of cardboard, performing deliveries, taking inventory, retrieving bottles for and assisting customers, cleaning around the store and moving boxes from trucks to the basement.

60.    From the beginning of the Gonzalez Employment Period through in or around April 2017, Plaintiff Gonzalez typically worked six (6) days per week, with Saturdays off, from 10:00 am to 9:00 pm on Mondays, Tuesdays and Wednesdays, from 11:00 am to 10:00 pm on Thursdays and Fridays and from 12:00 pm to 7:00 pm on Sundays, for a total of approximately sixty-two (62) hours per week. From in or around April 2017 through in or around September 2017, Plaintiff Gonzalez typically worked six (6) days per week, from 10:00 am to 8:00 pm, Monday through Friday and from 12:00 pm to 8:00 pm on Sundays, for a total of approximately fifty-five to fifty-seven (55-57) hours per week. From in or around October or November 2017 through in or around in or around December 2017, Plaintiff Gonzalez typically worked ten (10) hours per day, five (5)

days per week, Monday through Friday, for a total of approximately fifty (50) hours per week. From in or around January 2018 through the end of the Gonzalez Employment Period, Plaintiff Gonzalez typically worked eight (8) hours per day, from 12:00 pm to 8:00 pm, five (5) days per week, for a total of approximately forty (40) hours per week.

61.    From the beginning of the Gonzalez Employment Period through in or around April 2017, Plaintiff Gonzalez was paid nine dollars ($9.00) per hour for all hours for which he received compensation. From in or around April 2017 through in or around November 2017, Plaintiff Gonzalez received ten dollars ($10.00) per hour. During this period, Plaintiff Gonzalez received his wages entirely in cash with no breakdown of the hours that he had worked or his regular or overtime rates.

62.    From in or around November 2017 through in or around December 2017, Plaintiff Gonzalez was paid through a combination of cash and check. Specifically, he typically received twelve dollars ($12.00) per hour for forty (40) hours on the payroll check and eleven dollars ($11.00) per hour for ten (10) hours in cash.

63.    From in or around January 2018 through the end of the Gonzalez Employment Period, Plaintiff Gonzalez was paid thirteen dollars ($13.00) per hour for all hours for which he received compensation via payroll check.

64.    On one (1) occasion in or around early 2018, Plaintiff Gonzalez asked Defendant N. Patel and M. Patel if he could work a sixth day during the week. N. Patel and M. Patel responded by informing Gonzalez that he could work an extra day on Saturday or Sunday, but he would need to be paid eleven dollars ($11.00) per hour for all hours worked on the sixth day.

65.    From in or around November 2017 through in or around January 2018, Plaintiff received payment for forty (40) hours on a payroll check and ten (10) hours in cash.

66.     Despite the fact that Gonzalez typically worked well in excess of forty (40) hours per week, he received his regular hourly rate for all hours for which he received compensation.

67.     Throughout the Collective and Class Periods, Defendants kept track of the hours that Plaintiffs and Defendants' other employees worked by requiring them to write in the times that they arrived and left the store each day on a sheet of paper near the register.

68.     Throughout Plaintiffs' respective employment periods, they were rarely able to take a break of any kind. If they were able to take a break, it would typically last for a maximum of ten (10) minutes. Despite the fact that Plaintiffs were generally unable to take an uninterrupted break lasting anywhere near thirty (30) minutes, Defendants began deducting thirty (30) minutes from their respective payments each day for "lunch" starting in or around January 2018.

69.     Throughout their respective employment periods, Plaintiffs were only permitted to retain cash tips from deliveries. If a customer tipped via credit card or paid in the store, Defendants typically retained the entire tip amount. On numerous occasions, Plaintiffs observed Defendant N. Patel placing a cash tip that a customer had left for them directly into his pocket.

**Defendants' Unlawful Corporate Policies**

70.     Plaintiffs and the Collective and Class Action Members were paid by the same corporate policies of Defendants, including failing to pay minimum wage for all hours worked, overtime premiums and spread-of-hours premiums and failing to provide proper wage statements and wage notices.

71.     Defendants did not notify Plaintiffs or the Class Members whether they were relying upon the tip credit in calculating their hourly rate in accordance with the requirements of the NYLL.

72.     Because Defendants routinely violated the requirements for taking the tip credit

(i.e., did not provide notice, and the owners pocketed some of the tips) Defendants were not entitled to pay Plaintiffs and Defendnats' other tipped employees the New York "tipped" minimum wage and instead were obligated to pay the full statutory minimum wage for all hours that they worked.

73.    Defendants did not provide Plaintiffs or the Collective and Class Action Members with proper wage notices at the time of hire or by February 1 of each year.

74.    Defendants failed to provide accurate wage statements to Plaintiffs and the Collective and Class Action Members which reflected, among other information, all hours worked, including overtime hours, the regular and overtime pay rate(s) during the pay period.

75.    Despite the fact that Plaintiffs typically worked over forty (40) hours each week, Defendants did not pay them overtime premiums of one and one-half (1.5) their hourly rate.

76.    Despite the fact that Plaintiffs regularly worked in excess of ten (10) hours per day, Defendants failed to pay Plaintiffs and the Collective and Class Action Members an extra hour of minimum wage for such days.

77.    Defendants unlawfully withheld a portion of the gratuities to which Plaintiffs and the Collective and Class Members were entitled during their employment with Defendants.

78.    Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

79.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

80.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

81.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

82.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.

83.     By failing to notify Plaintiffs and the Collective Action Members that they were relying on the tip credit in calculating employees' hourly rates, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage. Therefore, Plaintiff and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

84.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

85.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

86.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action

Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Class Members)**

87.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

88.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

89.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

90.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.    Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate

18

of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

92.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS
### (Brought on Behalf of Plaintiffs and the Class Members)

93.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

94.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

95.     Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE
### (Brought on Behalf of Plaintiffs and the Class Members)

96.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

97.    Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiffs' and the Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

98. Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

99. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

100.    Defendants have willfully failed to supply Plaintiffs and the Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

101.    Due to Defendants' violations of the NYLL, Plaintiffs and Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**EIGHTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNLAWFUL WITHHOLDING OF GRATUITIES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

102.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

21

103.     Defendants have willfully failed to compensate Plaintiffs and the Class Members for all gratuities earned by withholding and retaining a portion of the tips left by the cusomters for the Plaintiffs and Class Members, in violation of § 196-d of the New York Labor Law. Accordingly, Defendants are required to compensate Plaintiffs and the Class Members for all gratuities withheld by Defendants.

104.     Due to the Defendants' New York Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid gratuities, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et al.*, 196-d.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.     Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.     An order tolling the statute of limitations;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.      An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

i.      An award of compensatory and liquidated damages as a result of Defendants' willful failure to pay all gratuities earned by Plaintiffs and the Opt-In Plaintiffs;

j.      An award of fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(1) pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-b);

k.      An award of two hundred fifty dollars ($250) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(3),

pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

l. An award of damages arising out of the non-payment of gratuities;

m. An award of liquidated damages arising out of the non-payment of gratuities;

n. An award of prejudgment and post-judgment interest;

o. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

p. Such other and further relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       May 31, 2018

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
Kristen E. Boysen (KB 0208)
boysen@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

24

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Garnet Wines & Liquors y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_____
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Garnet Wines & Liquors y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

_Trinidad Maldonado Prudente_
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Garnet Wines & Liquors y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

_____
Nombre Escrito