# PELTON GRAHAM LLC

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

BRENT E. PELTON, ESQ.                                                    OCTOBER 16, 2018
PELTON@PELTONGRAHAM.COM

**VIA ECF**

Honorable George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     ***Maldonado, et al. v. Manhattan Wines and Spirits Merchants, Inc., et al.***
        **Civil Action No. 18 Civ. 04838 (GBD)**

Dear Judge Daniels:

This office represents named plaintiffs Eduardo Maldonado,[1] Trinidad Maldonado and Edgar Gonzales (together, the "Named Plaintiffs") and opt-in plaintiff Marcial Galvez (the "Opt-in Plaintiff" and, together with the Named Plaintiffs, the "Plaintiffs") with respect to their claims against Defendants Manhattan Wines and Spirits Merchants, Inc. d/b/a Garnet Wines (hereinafter the "Corporate Defendant"), Navin Patel ("N. Patel") and Parita Patel ("P. Patel" and, together with N. Patel, the "Individual Defendants" and, collectively with the Corporate Defendant, "Garnet Wines" or the "Defendants"), in the above-referenced matter. This letter is submitted jointly with Emre Polat, Esq., counsel for Defendants, pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and Your Honor's September 13, 2018 Order. (Dkt. No. 24). Counsel for the parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

## I.     Introduction and Procedural History

The Named Plaintiffs commenced this action by filing a Class and Collective Action Complaint against Defendants alleging unpaid minimum wages and overtime premiums under the FLSA, 29 U.S.C. §§ 201 *et seq.* and New York Labor Law ("NYLL"), §§ 650 *et seq.*, as well as unpaid spread-of-hours premiums, unlawfully withheld gratuities and wage notice and wage statement violations under the NYLL. (*See* Dkt. No. 1). Plaintiffs alleged that they were former porters, cleaners, stockers, floor employees and delivery employees who worked for Defendants at their liquor store. On July 27, 2018, Defendants filed their Answer, denying all material

---

[1] While Plaintiff E. Maldonado filed a letter on July 10, 2018 stating that he wished to withdraw from the litigation (Dkt. No. 17), E. Maldonado is a party to the present settlement.

allegations in Plaintiffs' Complaint. (Dkt. No. 21). Your Honor referred the parties to mediation on June 29, 2018 as part of the Court's pilot program for cases involving FLSA claims. (Dkt. No. 16). On August 16, 2018, Plaintiffs produced a damages analysis based on Plaintiffs' best recollections of the hours that they worked and the wages they were paid. On August 27, 2018, opt-in plaintiff Galvez exercised his right to join the action by filing a consent to become a party plaintiff form with the Court. (Dkt. No. 22).

The parties subsequently participated in a full-day mediation on August 30, 2018 with Barbara Mehlsack, Esq. of the SDNY Mediation Program, where an agreement was reached on all issues.

## II.    The Settlement Accounts for Litigation Risk and Compensates Plaintiffs for Alleged Substantial Damages

Throughout this litigation, the parties have held significantly different viewpoints on the underlying facts of this matter and Defendants' potential liability. Plaintiffs allege that throughout their respective employment periods, they received an hourly rate that did not compensate them at the statutory minimum wage for all hours that they worked and were paid straight-time rates for all hours for which they received compensation, despite the fact that they typically worked well in excess of forty (40) hours each week. Specifically, Plaintiffs allege that they typically worked nine to twelve (9-12) hours per day, five to six (5-6) days per week, for a total of between approximately fifty (50) and seventy-two (72) hours per week. For their work, Plaintiffs allege that they typically received between eight dollars ($8.00) and thirteen dollars ($13.00) per hour for all hours for which they received compensation, including hours worked in excess of forty (40) in a week. Plaintiffs additionally allege that throughout their respective employment periods, they were only permitted to retain cash tips from deliveries and that Defendants would retain the entire tip amount if a customer tipped via credit card or in the store.

Throughout their respective employment periods, Plaintiffs allege that they typically received their wages entirely in cash from either Defendant N. Patel or M. Patel with no breakdown of the hours that they worked or their regular or overtime rates. Additionally, from in or around November 2017 through in or around December 2017, Plaintiff Gonzales additionally alleges that he was paid through a combination of cash and check. Specifically, he alleges that he typically received twelve dollars ($12.00) per hour for forty (40) hours on the payroll check and eleven dollars ($11.00) per hour for ten (10) hours in cash. Further, from in or around January 2018 through the end his employment period, Plaintiff Gonzales asserts that he was paid thirteen dollars ($13.00) per hour for all hours for which he received compensation entirely via payroll check. Finally, Plaintiffs allege that they did not receive a wage notice when hired or annually.

Defendants have vigorously denied Plaintiffs' allegations, including their claims for unpaid minimum wages and overtime premiums and the number of hours that they claim to have worked. While Defendants did not produce any documents in advance of the parties' mediation session, Defendants presented the mediator with the documents during the confidential mediation session. Defendants maintain that they are in possession of certain records showing Plaintiffs did not work the hours they alleged and that Plaintiffs received more compensation than alleged. While

Plaintiffs would dispute the accuracy of Defendants' records at trial, Plaintiffs recognize that such documents could potentially limit the amount of damages Plaintiffs could recover at trial if a factfinder credited Defendants' materials.

Due to the fact-intensive nature of the Plaintiffs' claims, it is likely that substantive answers to these disputed issues would not be resolved until after extensive additional written and deposition discovery, followed by summary judgment briefing, if not a trial. Plaintiffs intended to file a motion for conditional certification of a FLSA collective action followed by a Rule 23 class certification motion and dispositive motion on certain of the disputed legal issues as described above. Defendants would strongly oppose such motions and would have sought to decertify the collective action Based on these disputes, the parties engaged in good-faith, arm's-length settlement negotiations regarding not only Plaintiffs' FLSA claims, but also their pendent state law claims.[2]

Perhaps the biggest litigation risk, however, is Defendants' ability to pay a judgment if one were obtained by Plaintiffs. Defendants' liquor store is a small, one-location business which has only been in business for a few years. As such, rather than move forward with lengthy and costly litigation and potentially recover a judgment that may be impossible to collect, Plaintiffs prefer to settle now, on an individual basis, for an amount that they would be guaranteed to receive under the terms of the settlement.

As set forth above, Plaintiffs' counsel created a damages analysis based on Plaintiffs' best estimates of the hours that they worked and the wages they were paid. For the minimum wage claim, which was calculated based on the difference between the hourly rate that Plaintiffs were paid and the full statutory minimum wage, Plaintiffs calculated a total of $15,534.86. For Plaintiffs' unpaid overtime claim, which was calculated by multiplying the full minimum wage rate or Plaintiffs' hourly rate, whichever was higher, by 0.5 and multiplying the resulting overtime premium by the number of hours that Plaintiffs worked in excess of forty (40) each week, Plaintiffs calculated a total of $30,796.29. Plaintiffs' calculations for spread-of-hours damages, which were calculated by multiplying the number of days each week in which each plaintiff worked a shift or split-shift in excess of ten (10) hours by the applicable minimum wage, totaled $9,837.79. Taken together, the total damages for Plaintiffs' wage claims equaled $56,168.94. Thus, the settlement amount (i.e., $50,000.00) represents approximately 89% of Plaintiffs' alleged unpaid wage damages (not including liquidated damages, interest and penalties).

Plaintiffs' analysis also includes $4,451.43 in unpaid tips, which was calculated based on an estimate of ten dollars ($10.00) in withheld gratuities per week when Plaintiffs worked fewer hours or derived tips only from assisting customers on the floor and twenty dollars ($20.00) per week for employees who regularly performed tipped delivery work, and $15,850.00 and $19,250.00 for alleged wage notice and wage statement violations, respectively. Thus, when unpaid tips, wage notice and wage statement, liquidated damages under the FLSA and NYLL and

---

[2] Such claims, of course, may be waived by private agreement. *Amaya v. Garden City Irrigation, Inc.*, 2011 U.S. Dist. LEXIS 15316, at *4-5 (E.D.N.Y. Feb. 15, 2011).

statutory interest on the NYLL claims at 9% per annum were added to Plaintiffs' "actual" damages, the total alleged damages came out to $161,675.22.

While the settlement amount does not compensate Plaintiffs for their liquidated damages, penalties, and all of their attorneys' fees in addition to the damages, it represents a substantial portion of Plaintiffs' alleged unpaid wages damages. Moreover, the parties believe this is a fair recovery based on the risks associated with establishing the calculated damages, the risks associated with proceeding to trial and Defendants' ability to pay, which was a substantial factor in ultimately reaching the settlement number that was agreed to by the parties.

## III.    Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $50,000.00 (the "Settlement Amount"). Of that amount, $17,000.00 is payable to Plaintiffs' counsel, including $406.70 in expenses for counsel's costs for filing and service of the complaint, plus attorneys' fees in the amount of one-third (33.33%) of the Settlement Amount, after subtracting those expenses (i.e. $16,593.30). The remaining $33,000.00 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage and hour release of claims for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or the Settlement.

The agreement includes a mutual non-disparagement provision. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in an FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds both Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in an FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting Plaintiffs to make truthful statements about their experiences in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

As well, the mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain attorneys' fees in the event that they prevail.

## IV.    Plaintiffs' Attorney's Fees and Expenses

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (Exhibit B), as of October 16, 2018, Plaintiffs' counsel has spent more than 84 hours in prosecuting and settling this matter, resulting in a lodestar of $23,835.88. Plaintiffs' counsel has spent $406.70 in actual litigation costs. The portion of the settlement amount that plaintiffs seek as attorney's fees (i.e. $17,000.00) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which is less than the lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements. The retainer agreement between the Named Plaintiffs and their counsel and Plaintiff Galvez's opt-in consent set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, similar rates have been approved in connection with a recent wage and hour settlement in the Eastern District, which customarily has slightly lower rates than the SDNY. *See Hall v. Prosource Techs., LLC*, 14-cv-2502, 2016 U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable

For the purposes of this settlement, Defendants take no position with respect to Plaintiffs' counsel's request for attorneys' fees.

## V.    The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[3] Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food*, 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations over several months, including a full-day mediation with Barbara Mehlsack, Esq. of the SDNY Mediation Program. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. As explained above, the settlement represents a substantial recovery of Plaintiffs' unpaid wages. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs and the risk that recovery after trial would be less than the negotiated settlement amount. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

*        *        *        *        *

---

[3] The parties note that *Cheeks* relies heavily on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the Eleventh Circuit itself has subsequently contemplated that the supervision doctrine laid out in that case may apply only where a "compromise" of an FLSA claim has occurred. *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

HON. GEORGE B. DANIELS
JOINT SETTLEMENT FAIRNESS LETTER
PAGE **7** OF **7**

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties.  The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

**PELTON GRAHAM LLC**                              **POLAT LAW GROUP PLLC**


By: ___*/s/ Brent E. Pelton*___                   By: ___*/s/ Emre Polat*_____
Brent E. Pelton, Esq.                             Emre Polat, Esq.
Taylor B. Graham, Esq.                            45 Broadway, Suite 1420
111 Broadway, Suite 1503                          New York, NY 10006
New York, New York 10006                          Tel: (212) 480-4500
Tel.: (212) 385-9700

*Attorneys for Plaintiffs*                        *Attorneys for Defendants*


Enclosures